**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY BENSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>PREMIUM PARTS WHOLESALE LTD. d/b/a A-PREMIUM AUTOPARTS,<br><br>Defendant. | Docket No.<br><br>**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |

Plaintiff, ANTHONY BENSON, ("Plaintiff" or "Mr. Benson") on behalf of himself and all other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their putative class action complaint upon Defendant, PREMIUM PARTS WHOLESALE LTD. d/b/a A-PREMIUM AUTOPARTS ("A-PREMIUM" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding position that websites operated by places of public accommodation must be accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate that the goods, services, and privileges offered by such entities are equally accessible to all, including those with disabilities. (See DOJ Letter to Congress, last accessed July 19, 2024.)

2. Plaintiff, ANTHONY BENSON, is a totally blind resident of New York County, New York. Mr. Benson is totally blind as a result of bilateral enucleation — the surgical removal of

both eyes — following traumatic ocular injuries. His complete absence of visual function is documented by his treating ophthalmologist, Dr. Jeffrey G. Odel, M.D., of the Eye Clinic at Columbia University Irving Medical Center. (See Exhibit A.) Mr. Benson resides in Manhattan and relies exclusively on assistive technology to navigate digital environments and conduct daily online activities independently.

3. Mr. Benson is a proficient user of NonVisual Desktop Access ("NVDA") screen reader software, which he relies on daily to navigate digital environments independently. His fluency with keyboard commands and screen-reading protocols enables him to engage with complex content — including retail platforms, product selection pages, and online checkout systems — without assistance. NVDA's compatibility with properly coded websites is indispensable to his autonomy and digital independence.

4. This action arises from Defendant Premium Parts Wholesale Ltd. d/b/a A-Premium Autoparts's failure to design, maintain, and operate its website, www.a-premium.com, in a manner accessible to blind and visually impaired individuals. The website functions as an interactive retail platform for aftermarket automotive replacement parts, accessories, and automotive tools, offering nearly 180,000 SKUs covering a full range of mechanical and performance parts for makes and models including Acura, Honda, Toyota, Ford, and many others. The website serves as a digital gateway to Defendant's nationwide e-commerce operations — the sole channel through which Defendant's products are sold to consumers, including those residing in New York. Defendant's failure to ensure equal access violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5. On March 5, April 2, and May 14, 2026, Mr. Benson visited www.a-premium.com using NVDA with the intent to purchase aftermarket replacement parts for a 2021 Acura NSX — a high-

performance sports car that was left to him by a close relative and which he keeps garaged. Mr. Benson's roommate, who has agreed to provide transportation to medical appointments and labor assistance in exchange for reduced rent, owns the vehicle and has agreed to perform the repairs if Mr. Benson can procure the necessary parts. During these visits, Mr. Benson attempted to review and purchase two specific products: (1) an A-Premium Ignition Coil and Spark Plug Kit (8-piece iridium set, model APIC0493) for the NSX's ignition system maintenance; and (2) an A-Premium Front Driver Window Switch for the driver's power window control module. Because the website lacked proper alternative text on product images, contained empty and unlabeled interactive buttons and links, employed inaccessible vehicle-selector and search tools, and failed to provide screen-reader-compatible navigation throughout key sections of the site, Mr. Benson was unable to meaningfully access product information, select vehicle-specific fitment options, or complete the intended purchases.

6. These barriers included missing or meaningless alternative text on product imagery, multiple unlabeled and empty interactive buttons and links throughout the site, inaccessible form controls including the vehicle search selector tool, and severe contrast deficiencies — each of which rendered key content unreadable or non-functional under screen-reader software. The WAVE Web Accessibility Evaluation Tool analyses conducted on www.a-premium.com confirm that these violations are systemic and site-wide, documenting 16 errors and an AIM Score of 2.3 out of 10 on the homepage and 28 errors and an AIM Score of 2.2 out of 10 on an individual product page — in direct contravention of the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA standards, which are widely recognized as the benchmark for digital accessibility under the ADA.

7. Defendant Premium Parts Wholesale Ltd. d/b/a A-Premium Autoparts is a business

entity operating the website www.a-premium.com, a nationwide e-commerce platform offering aftermarket automotive replacement parts and accessories to consumers across the United States, including New York. Defendant maintains fulfillment operations in New Jersey, among other states, through which it regularly ships products to New York customers and derives substantial revenue from the New York market. Defendant is a rapidly growing global auto parts brand with nearly 180,000 high-quality SKUs and annualized revenues approaching $45 million. Defendant's digital platform is the exclusive means by which consumers — including New York consumers — access and purchase its products.

8. Mr. Benson specifically sought out A-Premium for the purchase of ignition and electrical parts for his 2021 Acura NSX — over other aftermarket parts retailers such as RockAuto, AutoZone, O'Reilly, and Advance Auto Parts — for several specific and non-interchangeable reasons. First, A-Premium's vehicle-specific search tool and guaranteed-fit promise represented a critical safeguard for a totally blind consumer who cannot physically inspect parts for compatibility before purchase. Second, A-Premium offered the precise part numbers and iridium spark plug specifications required for the NSX's high-performance engine at direct-to-consumer pricing substantially lower than OEM-dealer pricing. Third, A-Premium's 90-day return policy and 2-year warranty provided the consumer confidence necessary for a significant parts purchase made without the benefit of sight. Mr. Benson's interest in A-Premium as a retailer was specific, considered, and not interchangeable with other companies. As a totally blind consumer, he depends on accessible digital interfaces to independently identify compatible parts, confirm fitment specifications, and complete purchases without assistance. Defendant's failure to provide a WCAG-compliant website denied him equal access to the same search tools, vehicle-selector functions, product information, and purchasing services offered to sighted users. Despite revenues

approaching $45 million annually and its obligation under federal law to provide equal digital access, Defendant has neither published an accessibility statement nor implemented basic accessibility features, reflecting a pattern of disregard for the rights of disabled individuals.

9. Plaintiff seeks injunctive relief requiring Defendant to revise its digital policies and practices to ensure that its website is — and remains — fully accessible to blind and visually impaired users. Mr. Benson remains committed to maintaining an assistive technology regimen that supports his independence. Without remediation of the barriers described herein, he will continue to be excluded from accessing Defendant's goods and services on equal terms.

10. Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its website into compliance with federal accessibility standards.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

12. Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant Premium Parts Wholesale Ltd. d/b/a A-Premium Autoparts operates fulfillment centers in New Jersey from which it regularly ships products into this District and conducts

substantial and continuous business in this District through its interactive website, www.a-premium.com. Plaintiff accessed and attempted to use this website from his residence in New York County, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

14. Defendant actively engages in commercial transactions with New York residents through its website, including vehicle-specific parts searches, product selection, checkout, and order fulfillment. Defendant's digital infrastructure knowingly transmits data and files into New York, and Defendant's fulfillment operations in New Jersey serve the New York metropolitan area, establishing purposeful availment under federal precedent. See Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); Sanchez v. NutCo, Inc., 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

15. Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over website operators. Defendant conducts substantial and continuous business within this District by shipping aftermarket automotive parts to New York customers through its New Jersey fulfillment operations and through the sustained transmission of its interactive website into this forum.

## NATURE OF ACTION

16. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a totally blind resident of this District,

attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

17. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

18. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

19. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

20. Plaintiff, ANTHONY BENSON, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software, specifically NVDA for Windows.

21. For screen-reading software to function, website content must be capable of being

rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text... The screen reading software uses auditory — rather than visual — cues to relay this same information... Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*See also American Federation for the Blind, Screen Readers, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.*

22. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

23. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

24. Plaintiff Anthony Benson is a totally blind consumer residing in New York County, New York. He relies exclusively on NonVisual Desktop Access ("NVDA") screen-reader software to navigate digital content and complete online transactions independently. Mr. Benson has no visual function whatsoever, having undergone bilateral enucleation of both eyes following traumatic ocular injuries. He receives ongoing care and support from the Eye Clinic at Columbia

University Irving Medical Center, including specialists in neuro-ophthalmology and low vision rehabilitation, and his total blindness is documented by his treating physician, Dr. Jeffrey G. Odel, M.D. (See Exhibit A.)

25. On March 5, April 2, and May 14, 2026, Mr. Benson visited www.a-premium.com using NVDA with the intent to purchase aftermarket replacement parts for a 2021 Acura NSX. The vehicle — a high-performance sports car — was bequeathed to Mr. Benson by a close relative and is garage-kept in good condition but in need of maintenance and repair. Mr. Benson's roommate, who has agreed to trade rides to medical appointments and labor in exchange for reduced rent, is willing to perform the necessary repairs provided Mr. Benson can procure the required parts online. Mr. Benson sought to purchase two specific products: (1) an A-Premium 8-Piece Iridium Ignition Coil and Spark Plug Kit (model APIC0493) to address the NSX's ignition system; and (2) an A-Premium Front Driver Window Switch for the driver's power window module. As a totally blind consumer, Mr. Benson relies on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require him to seek assistance from strangers — an experience he finds uncomfortable, intrusive, and incompatible with his desire for independence.

26. Mr. Benson chose A-Premium specifically — over other aftermarket automotive parts retailers including RockAuto, AutoZone.com, O'Reilly Auto Parts online, and Advance Auto Parts online — for several distinct and non-interchangeable reasons. First and foremost, A-Premium's advertised vehicle-selector tool and "Guaranteed Fit" promise were critical for a totally blind consumer who cannot physically inspect parts prior to purchase; unlike competitors whose catalog search results do not guarantee year-make-model compatibility, A-Premium specifically represents that its parts are direct-fit replacements for the identified vehicle. Second, A-Premium

listed the precise iridium plug specifications and ignition coil part numbers required for the NSX's high-performance engine at direct-to-consumer prices substantially below OEM dealer pricing — a combination Mr. Benson had researched and determined was not available at comparable quality and price elsewhere. Third, A-Premium's 2-year parts warranty and 90-day return policy provided the consumer confidence essential to a large parts purchase made entirely without sight. Mr. Benson's interest in A-Premium was specific, deliberate, and not interchangeable with other companies.

27. While attempting to navigate www.a-premium.com on each of his three visits, Mr. Benson encountered multiple accessibility barriers that prevented him from using the vehicle-selector tool, reviewing complete product information, confirming part fitment, or adding items to his cart. The WAVE Web Accessibility Evaluation Tool analysis conducted on www.a-premium.com confirms these issues are systemic, documenting 16 errors on the homepage — including 1 missing alternative text, 2 missing form labels, 8 empty buttons, and 5 empty links — and an AIM Accessibility Score of 2.3 out of 10, well below any threshold of functional accessibility. A separate WAVE analysis of an individual product page on www.a-premium.com documented 28 errors — including 11 missing alternative texts, 3 missing form labels, 9 empty buttons, and 5 empty links — and an AIM Score of 2.2 out of 10, confirming that the product-level pages critical to Mr. Benson's intended purchases are equally inaccessible. Exhibit B.

28. Specifically, Mr. Benson encountered the vehicle-selector tool — the primary interface through which A-Premium directs consumers to locate compatible parts by Year, Make, Model, Trim, and Engine — as completely inaccessible under NVDA. The selector's form controls were either unlabeled or empty, preventing NVDA from announcing the available fields or their contents. When Mr. Benson attempted to navigate the tool using keyboard commands, NVDA

announced only empty or non-descriptive prompts, rendering the vehicle-selection process entirely unusable. Without the ability to operate the vehicle-selector, Mr. Benson could not filter the site's catalog to confirm that any part was compatible with his 2021 Acura NSX before purchase — the precise safeguard that had led him to choose A-Premium over competitors who did not offer a guaranteed-fit vehicle filter. The WAVE reports confirm that missing form labels and empty interactive controls are pervasive throughout the site, directly corroborating Mr. Benson's experience.

29. Mr. Benson also encountered significant barriers on the product listing and product detail pages for the Ignition Coil Kit and Front Driver Window Switch. Product images lacked meaningful alternative text — NVDA announced only empty or file-name-level descriptions rather than identifying the part or its specifications. The "Add to Cart," product option selectors, and promotional buttons throughout the product pages were empty buttons or unlabeled interactive elements, producing no announcement or only a generic "button" prompt under NVDA without any identifying label. The WAVE reports document 8 empty buttons on the homepage alone and 9 empty buttons on the product page, confirming that this barrier is not isolated but a site-wide design deficiency that rendered Mr. Benson unable to confidently select the correct parts or initiate a purchase.

30. The WAVE Web Accessibility Evaluation Tool analyses identify widespread failures in WCAG 2.1 Level A and AA compliance across www.a-premium.com, including missing or meaningless alternative text on images, empty and unlabeled interactive buttons and links, inaccessible form controls, and severe contrast deficiencies, including 152 contrast errors on the homepage and 106 contrast errors on the product page. These violations directly impacted Mr. Benson's ability to independently locate, evaluate, and purchase the Ignition Coil and Spark Plug

Kit and Front Driver Window Switch he sought for his 2021 Acura NSX.

31. In an effort to obtain assistance with the accessibility barriers he encountered, Mr. Benson attempted to locate an accessibility statement or dedicated accessibility-support resources on Defendant's website. Notably, and in contrast to even the minimum accessibility gesture made by some website operators, Defendant maintains no accessibility statement whatsoever on www.a-premium.com. There is no WCAG compliance notice, no ADA accessibility policy, and no accessibility help contact designated anywhere on the site. The complete absence of any accessibility statement reflects Defendant's failure to undertake even the most preliminary consideration of its obligations to blind users.

32. The WAVE analyses confirm the systemic nature of these failures across www.a-premium.com, demonstrating that the barriers Mr. Benson encountered were not isolated or temporary but part of a pervasive, site-wide pattern of non-compliance with WCAG 2.1 standards. Despite revenues approaching $45 million annually and a rapidly growing national customer base — including a strategic investment partnership with CarParts.com consummated in September 2025 — Defendant has failed to implement any discernible accessibility measures, reflecting a continuing pattern of disregard for the rights of blind and visually impaired consumers.

## CLASS ACTION ALLEGATIONS

33. Mr. Benson remains highly motivated to return to www.a-premium.com once it is made accessible. His interest is concrete, particularized, and ongoing: he still intends to purchase the A-Premium Ignition Coil and Spark Plug Kit and the Front Driver Window Switch for his 2021 Acura NSX, parts that remain listed and available on Defendant's website. These products are not reliably available to him at comparable price, warranty coverage, and guaranteed-fit assurance through third-party platforms, and he requires full access to Defendant's vehicle-selector tool, product pages, cart, and customer-service features to complete the intended transactions. Pursuant to

Calcano v. Swarovski North America Ltd., 36 F.4th 68 (2d Cir. 2022), Mr. Benson's intent to return is not speculative — it is grounded in his specific, documented desire to purchase identified products that remain available on Defendant's website, and his established pattern of attempting to access www.a-premium.com on multiple occasions.

34. Mr. Benson has suffered a past injury — his inability to complete his intended purchases of specific products due to documented accessibility barriers — and faces a real and immediate threat of future harm, given his stated intent to return once the website is accessible and the continuing presence of site-wide accessibility issues. His injuries are directly traceable to Defendant's failure to maintain an accessible website and are redressable through injunctive relief. Accordingly, Mr. Benson has standing to bring this action under Title III of the ADA.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

35. Plaintiff, ANTHONY BENSON, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

36. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

37. Defendant's Website, www.a-premium.com, is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

38. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products,

services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

39. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

40. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services

provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

41. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**SECOND CAUSE OF ACTION**
**(Violation of the New York State Human Rights Law)**

42. Plaintiff ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

43. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendants. Plaintiff, at all times relevant to this action, as a result of his total loss of vision through bilateral enucleation, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

44. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.a-premium.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

45. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

46. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ...

disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

47. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

48. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

49. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

50. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

51. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

52. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

53. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

54. Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

56. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all

persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

57. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

58. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

59. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

60. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass and preventing access in violation of NYCRL § 40.

61. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

62. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor

more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." Id.

63. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

64. Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

66. Defendant is subject to NYCHRL because it owns and operates the Website www.a-premium.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

67. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

68. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

69. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

70. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

71. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

72. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

73. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

74. Plaintiff is also entitled to reasonable attorneys' fees and costs.

75. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

76. Plaintiff, ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

77. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

78. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:**

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
June 26, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*

Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com